UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-262-CHL

NICOLE BRIONES-RIVERA,
o/b/o J.B.B., a minor,                                                    Plaintiff,

v.

NANCY BERRYHILL,
ACTING COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION,                                       Defendant.

## Memorandum Opinion and Order

Plaintiff Nicole Briones-Rivera ("Plaintiff") challenges the Commissioner's denial of supplemental security income benefits ("SSI") for her minor son, J.B.B. ("Claimant"). On July 29, 2016, Plaintiff consented to the undersigned's jurisdiction. (DN 16.) On October 24, 2016, Plaintiff moved for judgment on the pleadings; the Commissioner filed a response brief on January 18, 2017. (DN 20; DN 25.) Plaintiff did not file a reply brief. For the reasons stated below, the Court concludes that Plaintiff has waived any challenge to the Commissioner's decision and **AFFIRMS** the Commissioner's decision.

### I. Summary of Facts

This present action is Plaintiff's second attempt to obtain SSI benefits on behalf of Claimant. Her first application, filed on April 16, 2010, was denied on March 13, 2012. (DN 15-3, #141–44.) The Appeals Council subsequently declined to review that decision on February 13, 2013. (*Id.* at 161.) Less than two months later, on April 15, 2013, Plaintiff filed a second application for SSI benefits on behalf of Claimant, who was then six years old. (DN 15-5, #257.)

1

The Commissioner once again denied her initial application and again upon reconsideration. (DN 15-4, #197, 207.) Plaintiff, her attorney, and Claimant then appeared before an administrative law judge ("ALJ") for a hearing in January 2015. (DN 15-2, #104.) The ALJ issued an unfavorable decision in March 2015. (DN 15-2, #68.) In his written opinion, the ALJ made the following findings.

> 1. The claimant was born on October 25, 2006. Therefore, he was a preschooler on April 11, 2013, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity since April 11, 2013, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: Attention Deficit Hyperactive Disorder (ADHD); Asthma; and Allergic Rhinitis (20 CFR 416.924(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926(a).
>
> 6. The claimant has not been disabled, as defined in the Social Security Act, since April 11, 2013, the date the application was filed (20 CFR 416.924(a)).

(DN 15-2, #74–98.) The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 55.)

## II. Standard of Review

The Social Security Act authorizes payment of SSI to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as follows:

> [An i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). When a claimant files an application for SSI, the claimant must establish that he or she became "disabled" prior to the date his or her insured status expired. 42 U.S.C. § 423(a), (c); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (per curiam).

In cases in which an individual under the age of 18 is alleged to be disabled, the Social Security Administration has promulgated a three-step test. 20 CFR § 416.924(a). At step one, the ALJ must determine if the claimant has engaged in substantial gainful activity during the relevant period. *Id*. At step two, the ALJ must determine if the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *Id*. At the third and final step, the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or medically equal the severity of a listing or that functionally equal a listing. *Id*. The criteria for functional equivalent is listed in 20 CFR § 416.926a; a Plaintiff must demonstrate that the claimant has a marked impairment in more than one domain or an extreme impairment in at least one domain. 20 CFR § 416.926a. The six domains are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 CFR § 416.926a(b)(1). A marked limitation

3

is a "limitation that is 'more than moderate' but 'less than extreme,'" and the ALJ will find that a claimant has a marked limitation when "when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 CFR § 416.926a(e)(2). On the other hand, an extreme limitation is "more than marked" and the ALJ will find that a claimant has an extreme limitation:

> [W]hen your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.

20 CFR § 416.926a(e)(3).

The Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F. 3d at 695. In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). The Court must also determine if the correct legal standards were applied. *Landsaw v. Sec'y of Health & Human Servs.*, 803F.2d 211, 213 (6th Cir. 1986).

## III. Analysis

### A. Plaintiff Has Waived Any Challenge to the Commissioner's Ruling

Plaintiff's only "argument" is a global assertion that substantial evidence does not support the ALJ's functional equivalence analysis. (DN 20-1, #1160.) Plaintiff states that the "evidence does not support findings of less than marked limitations in the functional domains of 'acquiring and using information', 'interacting and relating with others', and 'attending and completing tasks'." (*Id*. at 1163.) Plaintiff's sole subheading, however, indicates that in addition to the domains listed in the preceding sentence, she also believes the ALJ erred in his analysis of the "health and physical well-being" and "moving about and manipulating objects" domains. (DN 20-1, #1162.) Thus, Plaintiff does not appear to contest the ALJ's analysis of the "caring for self" domain. In response, the Commissioner argues that Plaintiff has not presented any evidence that would cast doubt on the ALJ's findings, instead merely selecting a small sampling of the favorable medical evidence and "then globally assert[ing] that the ALJ erred in not finding functional equivalence." (DN 25, #1180.)

The Court agrees with the Commissioner. Plaintiff does not explain how the ALJ erred in his analysis of the five domains and why the Court should reverse his decision. Instead, she merely recites Social Security Rulings and some of the medical evidence from the record, but does not argue how the cited evidence demonstrates that the ALJ's domain analyses are not supported by substantial evidence. (DN 25, #1162–63.) The Court is thus left to wonder what Plaintiff is trying to contend. Did the ALJ not follow the Social Security Rulings, and if so, how did he not? Did the ALJ ignore important medical evidence in his analyses, and if so, for which domain and how? Plaintiff also recites medical evidence from Claimant's treating pediatrician,

Dr. Emily Johnson, but does not explain how the evidence is important. (*Id*. at 1163.) Do Dr. Johnson's opinions undermine the ALJ's analysis of the six domains? Or is Plaintiff attempting to argue that the ALJ failed to give the proper weight to her opinions? The Court cannot say because Plaintiff never elaborates.

It is not the Court's obligation to divine what arguments a plaintiff is attempting to make when she merely makes conclusory allegations such as "[t]he ALJ's functional equivalence analysis is not supported by substantial evidence" and nothing more. (*Id*. at 1163.) Case law from this Circuit and the District Courts within it does not look fondly upon such bare-bones attempts at argument. *See Owings v. Colvin*, 133 F. Supp. 3d 985, 997–98 (M.D. Tenn. 2015) ("The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged."); *McClellan v. Astrue*, 804 F. Supp. 2d 678, 688 (E.D. Tenn. 2011) ("the court is under no obligation to scour the record for errors not identified by the claimant") (citing *Woods v. Comm'r of Soc. Sec.* 2009 WL 3153153 (W.D. Mich. Sep. 29, 2009) at *7 (holding that arguments not raised and supported in more than a perfunctory manner may be deemed waived)). *See also Moore v. Comm'r of Soc. Sec.*, 573 Fed. App'x. 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F. 3d 477, 490–91 (6th Cir. 2006) (holding that the plaintiff waived most of her argument on how the Commissioner's decision was not supported by substantial evidence when she "made

little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record.").

In *Owings*, for instance, the Court deemed that the social security claimant had waived any potential argument regarding ALJ error when he failed to provide any supporting factual allegations. *Owings*, 133 F. Supp. 3d at 997. Similarly, in *Moore*, the Sixth Circuit concluded that the plaintiff had waived her argument that the ALJ failed to assign controlling weight to her treating physicians when she did not elaborate how exactly the ALJ erred or provide "further development of the argument." *Moore*, 573 Fed. App'x. at 543. This is the very same scenario before the Court. Plaintiff alleges that the "ALJ's functional equivalence analysis is not supported by substantial evidence," but this is the first and last attempt at argumentation in her written submission. (DN 20-1, #1163–64.) The Court declines to delve into Plaintiff's recitation of certain portions of the medical evidence and extract potential arguments from them.

Therefore, the Court finds that Plaintiff has waived any argument regarding the Commissioner's decision.

**B. Alternatively, Plaintiff's Insinuations Regarding Dr. Johnson's Opinions Lack Merit**

Even if Plaintiff had developed an argument against the Commissioner's ruling, it would still fail. Because of the lack of argument in Plaintiff's written submission, the Court must make assumptions as to what Plaintiff wants the Court to review. Although not clearly or affirmatively stated, Plaintiff appears to take issue with the ALJ's treatment of Dr. Johnson's medical opinion. (DN 20-1, #1163.) In his written opinion, the ALJ considered two of Dr. Johnson's opinions: a July 2013 report and an October 2014 report. (DN 15-2, #89–90.) In the July 2013 report, Dr. Johnson opined that the Claimant had marked limitations in the domains of acquiring and using

information, interacting and relating with others, attending and completing tasks, and health and physical well-being. (DN 15-7, #826–27.) The ALJ, however, found the July 2013 report "unpersuasive" and did not assign it controlling or "greater than minimal weight." (DN 15-2, #89.) The ALJ found it to be unpersuasive because the report suggested greater degrees of limitation than Dr. Johnson's own treatment notes, other medical evidence, and evidence from educational sources support. (*Id.*) The ALJ also found her October 2014 report, which opined that Claimant had acute health problems due to ADHD, persistent asthma, and autism, to be "unpersuasive" for the same reasons. (*Id.* at 90; DN 15-8, #1145.)

"The opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary." *Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (citing *Crouch v. Sec'y of Health & Human Servs.*, 909 F. 2d 852, 857 (6th Cir. 1990)); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F. 2d 922, 927 (6th Cir. 1987). If the ALJ does not give controlling weight to a treating source's opinion, he is required to:

> [A]pply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson v. Comm'r of Soc. Sec.*, 378 F. 3d 541, 544 (6th Cir. 2004); 20 CFR §§ 404.1527(c), 416.927(c). If the ALJ does not give deference to a treating physician's opinion, then he must also articulate "good reasons" supported by substantial evidence for not doing so. *Cole v. Astrue*, 661 F. 3d 931, 937 (6th Cir. 2011). A good reason for rejecting the opinion of a treating physician exists when that physician's opinion is not supported by objective medical evidence

contained in the record. *Edwards*, 97 Fed. App'x. at 570. Even though the ALJ must articulate "good reasons," he is not required to explicitly recite the regulation factors as long as his reasons reflect them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008).

The Court finds that substantial evidence supports the ALJ's decision to give Dr. Johnson's reports little weight. For the July 2013 report, the ALJ noted how Dr. Johnson claimed that Claimant was suffering from "frequent asthma exacerbations or flares," but there was no corroboration (such as inpatient hospital treatment or E.R. visits), and the claims were contradicted by the records of the treating respiratory specialists. (DN 15-2, #89.) Dr. Johnson also opined that Claimant had ADHD, which limited his learning abilities and required him to be hospitalized. (DN 15-7, #827.) But as the ALJ explained, Dr. Johnson is a pediatrician – not a psychiatrist – Claimant did not have any records of psychiatric hospitalization, and the records from his treating psychiatrists (Dr. Strumpf and Dr. Mayo) show that Claimant does well when he follows a daily regimen of medication. (DN 15-2, #89–90.) Moreover, Claimant's twenty psychiatry visits from April 2013 to December 2014 did not produce any evidence that would lend credence to Dr. Johnson's opinion. (*Id*. at 90.) Dr. Johnson opining on matters outside her medical specialty constitutes a good reason in of itself for denying her opinion controlling weight. *See* 20 CFR § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."); *Justice v. Comm'r Soc. Sec. Admin*, 515 Fed. App'x. 583, 588 (6th Cir. 2013) (holding that substantial evidence supported the ALJ's decision to assign a general internal physician's opinion little weight when he opined on the claimant's mental health status). The ALJ's decision is also buttressed by the lack of objective medical

evidence supporting Dr. Johnson's opinions, which qualifies as a "good reason" for not assigning them controlling weight. *See Edwards v. Comm'r of Soc. Sec.*, 97 Fed. App'x. 567, 570 (6th Cir. 2004) (holding that the lack of objective medical records satisfied the good reason requirement for not giving the treating physician's opinion controlling weight). Therefore, substantial evidence supports the ALJ's decision to assign little weight to the July 2013 report.

Plaintiff's "arguments" about the ALJ's treatment of the October 2014 report are unpersuasive for the same reasons. Once again, the ALJ noted how Dr. Johnson was outside her area of specialty when she stated that Claimant suffered from health issues stemming from ADHD and had autism with sensory and communication skill issues. (DN 15-2, #90.) Regarding Claimant's alleged autism, the ALJ reviewed Dr. Johnson's treatment notes and found that neither they nor the records of his treating psychiatrists supported her conclusions. (*Id.*) Dr. Johnson's basis for the diagnosis, as the ALJ explained, seemed to stem from Plaintiff's subjective complaints alone. (*Id.*) For Dr. Johnson's conclusion that Claimant's ADHD caused him to have difficulty concentrating in school and overstimulation in general, the ALJ once again noted how the records of Dr. Strumpf and Dr. Mayo, along with Claimant's school records, did not corroborate her opinion. (*Id.*) All of these constitute good reasons for denying the October 2014 report controlling weight, and thus the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

For the reasons stated above, the Court **AFFIRMS** the Commissioner's final decision. The Court will enter a judgement in accordance with this opinion.

cc: Counsel of record